[Cite as *State v. Wright*, **2020-Ohio-6783.**]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo  Court of Appeals No. L-20-1016

    Appellee  Trial Court Nos. CRB-19-05681-0101
CRB-19-05682-0101

v.

Sha-Dama L. Wright  **DECISION AND JUDGMENT**

    Appellant  Decided: December 18, 2020

* * * * *

John F. Potts, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Following a bench trial, defendant-appellant, Sha-Dama L. Wright appeals the December 3, 2019 judgment of the Toledo Municipal Court, convicting her of aggravated menacing and littering. Plaintiff-appellee, the city of Toledo, has not filed a brief. For the following reasons, we affirm, in part, and reverse, in part, the trial court judgment.

# I. Background

{¶ 2} On May 16, 2019, defendant-appellant, Sha-Dama Wright, was charged in Toledo Municipal Court case No. CRB-19-05681-0101, with aggravated menacing, a violation of R.C. 2903.21, a first-degree misdemeanor (Case 1), and in Toledo Municipal Court case No. CRB-19-05682-0101, she was charged with littering, a violation of R.C. 3767.32(A), a third-degree misdemeanor (Case 2). Wright retained counsel and entered a plea of not guilty in both cases on May 17, 2019.

{¶ 3} Case 1 and Case 2 were assigned to two different judges. Case 1 was set for trial on May 29, 2019. The victims failed to appear for trial and over Wright's objection, the case was reset for trial on June 18, 2019.

{¶ 4} Wright appeared in court with counsel on both cases on June 18, 2019. Case 1 was set for an attorney-only pretrial on July 10, 2019. Case 2 was set for trial on July 16, 2019.

{¶ 5} After the July 10, 2019 pretrial, Case 1 was set for trial on August 7, 2019. Wright appeared with counsel in Case 2 on July 16, 2019, but that trial was also reset for August 7, 2019. Wright appeared with counsel on August 7, 2019, on both cases, but the cases were not tried. Instead, they were sent to the presiding judge for consolidation. The cases were consolidated on August 12, 2019.

{¶ 6} The consolidated case was reset for trial on September 3, 2019. Wright appeared again with counsel, and the case was again reset for trial on October 29, 2019.

2.

When she appeared with counsel on October 29, 2019, Wright informed the court that she wished to retain new counsel. The court inquired of Wright:

> The Court: We are here for a trial in this matter. However, it's been brought to my attention, Ms. Wright, that you are upset with your current counsel; is that correct?
>
> The Defendant: I would like to hire new counsel, Your Honor.
>
> The Court: And why is that?
>
> The Defendant: Um, because I'm not um, -- we have some communication issues, and I'm not satisfied.
>
> The Court: Are you saying you're not willing to work with this attorney?
>
> The Defendant: Um, yes, Your Honor.
>
> The Court: I don't know anything about the case. Counsel appears in front of me often; if not weekly. She knows what she's doing. I don't know what was discussed or what was going on but she's as competent as anybody to try a case. But you will not work with her?
>
> The Defendant: No, Your Honor.

{¶ 7} The court agreed to allow Wright's attorney to withdraw so that she could retain new counsel. He addressed the victims and Wright, indicating that the next trial date—December 3, 2019—would be firm:

3.

The Court:  * * * Defendant, in our system, does have a right to have an attorney.  She does have an attorney, but now is indicating that she's not willing to work with that attorney.  Which creates some issues potentially, down the road, that prosecutor [sic] can discuss more with you.  I'm very, very reluctantly going to grant another date in this case.  But I'm telling you, on the record, Ms. Wright, that the date I set is the date it's going for trial.  That is, if you don't have an attorney, it's going to go to trial.  If you have an attorney, who you don't like, and are disagreeing with that day, it's going to go to trial.  No matter what, the next date it's going to go to trial.  Is that understood?

The Defendant:  Yes, Your Honor.

The Court:  You agree with that?

The Defendant:  Yes, Your Honor.

* * *

The Court:  And you understand December 3rd is going to be the trial date?  One way or the other; with new counsel, without new counsel, you understand?

The Defendant:  Yes, Your Honor.

The court instructed Wright to provide her new counsel with the discovery that had been provided to her by the city.

{¶ 8} On November 12, 2019, Wright's newly-retained attorney entered an appearance in the case. On November 26, 2019, he filed a motion to vacate the trial date because he was already scheduled to be in trial in another courtroom on the same day. The court denied the motion the next day.

{¶ 9} On December 3, 2019, counsel appeared with Wright and again explained that he was trying a case in another courtroom. He also told the court that previous counsel failed to request certain potentially-exculpatory discovery and that he was unable to open one of the disks provided in discovery. He renewed his request to vacate the trial date. The court again denied the request.

{¶ 10} The case proceeded to trial. The city offered an opening statement; counsel for Wright respectfully declined to proceed and left when it was time for his conflicting trial to begin. Wright was given the opportunity to cross-examine the city's witnesses, but Wright informed the court that she did not wish to proceed without her attorney. She declined to present her own evidence or provide closing argument for the same reason.

{¶ 11} The court found Wright guilty of both charges. Without her attorney present, it sentenced Wright to 180 days on the aggravated menacing conviction and 60 days on the littering conviction, ordered the sentences to be served concurrently, and ordered all of the days suspended, except two days, which the court ordered Wright to serve on a weekend of her choosing. It also imposed 80 hours of community service on each of the cases. Wright moved for a new trial, which the court denied on December 18, 2019.

{¶ 12} Wright appealed.  She assigns the following errors for our review:

ASSIGNMENT OF ERROR I:  IT CONSTITUTED ERROR NOT TO MAKE A REASONABLE INQUIRY AS TO WHY DEFENDANT WAS DISSATISFIED WITH HER ORIGINAL RETAINED COUNSEL BEFORE MAKING AN ORDER PURPORTING TO DENY DEFENDANT THE ASSISTANCE OF COUNSEL AT TRIAL.

ASSIGNMENT OF ERROR II:  IT CONSTITUTED ERROR TO DENY DEFENDANT HER RIGHT TO BE REPRESENTED BY COUNSEL OF HER CHOICE AT TRIAL.

ASSIGNMENT OF ERROR III:  IT CONSTITUTED ERROR TO DENY DEFENDANT TO PROCEED TO TRIAL [sic] WITHOUT THE ASSISTANCE OF COUNSEL.

ASSIGNMENT OF ERROR IV:  IT CONSTITUTED ERROR TO SENTENCE DEFENDANT WITHOUT COUNSEL.

ASSIGNMENT OF ERROR V:  IT CONSTITUTED ERROR TO CONSOLIDATE DEFENDANT'S CASES BEFORE JUDGE HOWE.

## II.  Law and Analysis

{¶ 13} Wright argues in her first assignment that the trial court erred in failing to make a reasonable inquiry into the basis for her dissatisfaction with her first attorney.  In her second assignment, she argues that the court erred in denying her right to be represented at trial by counsel of her choice.  In her third assignment, she argues that the

6.

court erred in forcing her to proceed to trial without assistance of counsel. In her fourth assignment, she argues that the court erred in sentencing her without counsel. And in her fifth assignment, she argues that it was error for the presiding judge to assign her case to Judge Howe when it consolidated her aggravated menacing and littering cases.

{¶ 14} We address Wright's assignments out of order.

## A. Violation of Wright's Right to Counsel

{¶ 15} In her third assignment of error, Wright argues that the trial court violated her Sixth Amendment right to counsel because it forced her to go to trial pro se (1) without giving her the required warnings, and (2) after she repeatedly told the court that she did not want to proceed without a lawyer. This issue presents us with a question of law, which we review de novo. *State v. Wilkerson*, 4th Dist. Pike No. 06CA749, 2008-Ohio-398, ¶ 8. *State v. Reece*, 6th Dist. Lucas No. L-17-1314, 2019-Ohio-2259, ¶ 14 ("Whether a defendant knowingly, intelligently, and voluntarily waived the right to counsel is an issue that we review de novo.").

{¶ 16} "It is axiomatic that a criminal defendant has a right to counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, as well as a right to act as his own counsel during trial, if he so chooses." *State v. Harris*, 6th Dist. Erie No. E-02-019, 2003-Ohio-5190, ¶ 23, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). But "before a defendant may serve as his own counsel, the defendant must knowingly, intelligently, and voluntarily waive his right to assistance of counsel." *State v. Weiss*, 92

7.

Ohio App.3d 681, 684, 637 N.E.2d 47 (9th Dist.1993). Ohio appellate courts have recognized that a waiver of the right to counsel may be express, or it may be inferred from the circumstances of an individual case. *State v. Ebersole*, 107 Ohio App.3d 288, 293, 668 N.E.2d 934, 937 (3d Dist.1995).

{¶ 17} In *Weiss*, the court observed that trial courts are sometimes confronted with a defendant who is financially able to retain counsel but fails to do so "in an attempt to delay or otherwise frustrate the judicial process." *Id.* at 685. It acknowledged that in such a situation, a valid waiver may be implied from the circumstances of the case, however, it emphasized that even where a waiver is implied by a defendant's purported delay tactics, the court must inquire to determine whether the defendant fully understands and intelligently relinquishes his or her right to counsel and to ensure that he or she has "some sense of the magnitude of the undertaking and the hazards inherent in self-representation." *Id.*

{¶ 18} Citing the U.S. Supreme Court's decision in *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948), the *Weiss* court outlined the information that must be provided to a defendant in order to obtain a valid waiver of the right to counsel: "an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Weiss* at 685. The court clarified that this

8.

inquiry must be made, "even when the defendant is seemingly engaging in delay tactics
* * *." *Id.*

{¶ 19} In *Weiss,* the defendant appeared for trial without an attorney after retaining and firing several attorneys and indicating that he wanted a private attorney to represent him. Over Weiss's objection, the trial court proceeded to trial, requiring Weiss to represent himself with appointed counsel serving as second chair. The appellate court determined that "[a]lthough the court evidently informed Weiss that, if he showed up in court without representation, he would not be granted a further continuance and would be required to proceed *pro se,* there [was] nothing to indicate that Weiss knew the ramifications of that threat." *Id.* at 686. It concluded that the trial court should have made an inquiry of Weiss consistent with *Von Moltke* to ensure that he understood the ramifications of proceeding without an attorney, and if Weiss said that he still wanted an attorney, it should have granted one last continuance. "If Weiss then appeared in court without representation, the court could proceed with trial, knowing that Weiss knew that he would be required to proceed *pro se* and also knew the possible consequences of being required to represent himself." *Id.*

{¶ 20} Numerous Ohio courts have followed *Weiss.* In *City of Akron v. Hill*, 9th Dist. Summit No. 17230, 1996 WL 11983 (Jan. 10, 1996), the court set a trial date of January 17, 1995. On December 7, 1994, Hill's retained attorney moved for a one-day continuance because of a scheduling conflict; the court denied the motion. On

9.

December 30, 1994, counsel moved to withdraw "'based upon the wishes of the Defendant.'" *Id.* at *1. The trial court granted the motion.

{¶ 21} On January 17, 1995, Hill appeared without counsel. She expressed that she was having financial difficulties in retaining a lawyer and asked the court to appoint her one. The court told her that she did not qualify for appointed counsel. It continued the trial until February 2, 1995, to give her an opportunity to retain new counsel. The court told her that she had the right to an attorney, but if she did not have one, she would have to go forward, representing herself.

{¶ 22} On January 31, 1995, new counsel entered an appearance and moved the trial court to continue the trial date due to a scheduling conflict. The court denied the motion the next day: "The trial was set on January 17, 1995 after the court had allowed two continuances at the request of the defense. On January 17, 1995 the court advised the defendant on the record and in open court that she should retain counsel immediately, because the date of jury trial would not be continued again. Based upon the foregoing, the defense motion for continuance of trial is overruled." *Id.* at *2.

{¶ 23} Hill appeared for trial on February 2, 1995, without counsel. The court asked her if she intended to offer an opening, and Hill responded that she was not qualified to do so. The trial court recounted the events leading to her appearance at trial without counsel, and informed her of her right to participate in the trial. Hill repeated that she was not qualified to defend herself. She did not question witnesses, put on

10.

evidence, or make a closing argument. The jury found defendant guilty of the charges against her.

{¶ 24} On appeal Hill argued that the trial court deprived her of her constitutional right to counsel. The city maintained that she implicitly waived her right to counsel "under the totality of the circumstances." The appellate court concluded that Hill's right to counsel had been violated. It found that while "the trial court warned defendant on January 17, 1995, that, if she showed up on February 2, 1995, without counsel, she would be forced to proceed *pro se*[,] [i]t did not * * * conduct the type of inquiry into defendant's understanding of the ramifications of proceeding without an attorney that is necessary to ensure that a waiver is knowing and voluntary." *Id.* at *4.

{¶ 25} Similarly, in *State v. Hunter,* 9th Dist. Lorain No. 10CA009903, 2012-Ohio-1121, the trial court set a trial date of May 13, 2009, which it then continued to June 10, 2009. When the parties appeared for trial on June 10, 2009, Hunter requested a continuance to retain counsel. The court denied the request and the matter proceeded to trial, where Hunter was forced to defend himself.

{¶ 26} The appellate court recognized that "[t]he Sixth Amendment provides that a criminal defendant shall be entitled to have the assistance of counsel for his defense, as well as the right to act as his own counsel when he knowingly, voluntarily, and intelligently elects to do so." *Id.* at ¶ 14. But it observed that to ensure that a waiver of counsel is made knowingly, voluntarily, and intelligently, the trial court must make "a sufficient inquiry to determine whether the defendant was advised of the dangers and

11.

disadvantages of self-representation." *Id.* This requires "a showing on the record that the defendant who elects to conduct his own defense had some sense of the magnitude of the undertaking and the hazards inherent in self-representation." *Id.* at ¶ 15. It emphasized that this inquiry "'must be made, even when the defendant is seemingly engaging in delay tactics, because such a delaying strategy by the defendant is often employed where the defendant does not understand the crucial role of counsel in criminal cases.'" *Id.*, quoting *Weiss*, 92 Ohio App.3d at 685, 637 N.E.2d 47.

{¶ 27} Because the trial court did not advise Hunter of the dangers of self-representation before commencing trial, the court concluded that the defendant's Sixth Amendment right to counsel was violated. *See also State v. Miyamoto*, 3d Dist. Union No. 14-05-43, 2006-Ohio-1776, ¶ 16-19 (finding violation of right to counsel even though the proceedings were continued twice so that defendant could obtain counsel, and he was given a Public Defender Application which was never completed and submitted to the court).

{¶ 28} Here, it cannot be disputed that the trial court advised Wright on the record on October 29, 2019 (the fifth trial date in the aggravated menacing case)—and Wright indicated that she understood—that the case would be tried on December 3, 2019 *with or without counsel.* Despite Wright's representation that this was never journalized, notations consistent with the admonition are contained in the docket entries: the docket in the aggravated menacing case indicates that it "will go forward w/ or w/out counsel," and the docket in the littering case indicates that the case was "not to be reset by

12.

[defendant] again." Moreover, counsel confirmed that Wright communicated this message to him ("[T]he defendant did tell me The Court had cautioned her that this case was going to proceed to trial today no matter what.").

{¶ 29} A review of the transcript of the October 29, 2019 hearing also demonstrates that the nature of the charges and the potential penalties were, for the most part, explained to Wright. But this was done in the context of detailing a rejected plea offer, and Wright expressed a major concern about certain collateral consequences on her state employment if convicted; the court and counsel were unable to advise her in this regard. Nor did the court address "possible defenses" and "circumstances in mitigation" or discuss with her the crucial role of counsel in criminal cases. *See Von Moltke*, 332 U.S. at 724, 68 S.Ct. 316, 92 L.Ed. 30; *Hunter*, 9th Dist. Lorain No. 10CA009903, 2012-Ohio-1121, at ¶ 15.

{¶ 30} Like the trial court, we are very troubled by the timeline in this case. The aggravated menacing case was scheduled for trial six times; the littering case five times. The victims appeared multiple times—one from Amherst, Ohio, and one from Napoleon, Ohio. Moreover, counsel entered an appearance on November 12, 2019, yet despite these clear warnings by the court, he waited two full weeks before filing a motion for a continuance. He filed this motion November 26, 2019—the Tuesday before Thanksgiving—and the court promptly denied the motion the next day, before the holiday. Nevertheless, Wright and her attorney appeared the following Tuesday not prepared to proceed. While this may not have been a delay tactic, per se, it certainly

presented an inconvenience to the witnesses and interfered with the court's administration of its docket.

{¶ 31} Having said this, "there is a presumption against finding that a defendant has waived his or her right to counsel." *Reece*, 6th Dist. Lucas No. L-17-1314, 2019-Ohio-2259, at ¶ 9. *See also State v. Wilkerson*, 4th Dist. Pike No. 06CA749, 2008-Ohio-398, ¶ 12 ("[W]e must indulge every reasonable presumption against a waiver of fundamental constitutional rights.") Moreover, "[t]he State bears the burden of overcoming presumptions against a valid waiver." (Internal quotations and citations omitted.). *State v. Herron*, 11th Dist. Lake No. 2009-L-119, 2010-Ohio-2050, ¶ 23. Here, the state did not make *any* arguments against waiver—indeed, it did not file a brief on appeal.

{¶ 32} Under the circumstances of this case, particularly given the city's failure to file a brief on appeal, we cannot conclude that Wright was adequately informed of the magnitude of the undertaking and the hazards inherent in self-representation such that a waiver of her right to counsel may be inferred.

{¶ 33} Accordingly, we find Wright's third assignment of error well-taken. We deny as moot her first, second, and fourth assignments of error.

**B. Consolidation of the Cases**

{¶ 34} In her fifth assignment of error, Wright argues that the procedure used in consolidating her aggravated menacing and littering cases violated Toledo Municipal Court Local Rule 15(C)(3). She maintains that under this rule, the cases should have

been consolidated within the case with the lower case number.  Had this procedure been used, her cases would have been assigned to Judge Wagner instead of Judge Howe.

{¶ 35} Toledo Municipal Court Local Rule 15(C)(3) provides that "[i]n criminal and traffic cases, when a plea of not guilty is entered, the court services department will randomly assign the case to a specific judge except:  * * * [i]f a defendant has multiple charges with different case numbers, the cases will be assigned to a single judge."  While it may be the custom of the municipal court to consolidate cases into the case with the lowest case number, Toledo Municipal Court Local Rule 15(C)(3) does not state that the cases must be consolidated into the case with the lower case number.  *Compare* Lucas County Common Pleas Court Local Rule 5.02(B) ("If the designation sheet indicates that there is a related or companion case pending, the designation sheet will be sent to the newly assigned judge to review the request for consolidation with the judge who has the pending case with the lowest number.").

{¶ 36} Accordingly, we find Wright's fifth assignment of error not well-taken.

### III.  Conclusion

{¶ 37} Because the trial court forced Wright to proceed to trial pro se without obtaining an express or implied waiver of her right to counsel, thereby violating her Sixth Amendment right to counsel, we find her third assignment of error well-taken.   Because Toledo Municipal Court Local Rule 15(C)(3) does not state that when consolidating cases, the case with the higher case number must be consolidated into the case with the

15.

lower case number, we find her fifth assignment of error not well-taken. We deny as moot her first, second, and fourth assignments of error.

{¶ 38} We affirm, in part, and reverse, in part, the December 3, 2019 judgment of the Toledo Municipal Court. We remand this matter to the municipal court for a new trial. The city is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                          _____
                                                              JUDGE
Christine E. Mayle, J.
CONCUR.
                                              _____
                                                              JUDGE


Gene A. Zmuda, P.J.                           _____
CONCURS AND WRITES                                        JUDGE
SEPARATELY.


**ZMUDA, P.J.**

{¶ 39} Because I agree with the majority's analysis regarding the assigned errors, I concur with the majority's decision to reverse for a new trial. I write separately to address the character of the continuances in the trial court proceedings, viewed as probable delaying tactics by the majority.

16.

{¶ 40} Initially, appellant was charged in two separate cases and had two separate judges, one presiding over her littering case and one presiding over her aggravated menacing case. While there were numerous continuances in each case, both before and after the matter was consolidated before a single judge, the record indicates that the trial court continued the first trial date in the aggravated menacing case over appellant's objection, after the victim did not appear for trial. Furthermore, the aggravated menacing case was twice continued for pretrial with attorneys only, apparently to address the status of plea negotiations. Another trial continuance occurred immediately after the two cases were consolidated, with both cases assigned to the judge presiding over the littering case.

{¶ 41} Once the trial court consolidated the two cases in August 2019, there were two more trial continuances. The trial court continued the trial from September 3 until October 29, 2019. On September 4, 2019, appellant's trial counsel was granted leave to withdraw. The trial court noted that appellant refused to cooperate with her counsel and rejected a negotiated plea. The trial court continued the trial date until December 3, 2019, and cautioned appellant that the new trial date was a firm date, and the trial would proceed whether appellant had retained new counsel or not.

{¶ 42} Based on the trial court's docket entries regarding each new trial date, I would not characterize each continuance as a pure, delaying strategy on the part of appellant, as the chronology of events in this case do not bear the unmistakable mark of undue delay. It appears, instead, that the trial court accommodated counsel requests to explore a plea agreement and also rescheduled the trial date after consolidation to place

17.

the two cases on a single court calendar.  While appellant may have purposefully worked toward delaying her trial date, the record presents a more nuanced picture, demonstrating additional factors at play.  I agree with the majority's judgment, but I find this case presents even more egregious circumstances than the trial court's mere failure to engage in a colloquy with appellant, as noted by the majority.  I, therefore, respectfully concur.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.