[Cite as *State v. Terrell*, 2022-Ohio-4312.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                          Court of Appeals No.  OT-22-013

    Appellee                                     Trial Court No.  20 CR 243

v.

Harry Terrell                                         **DECISION AND JUDGMENT**

    Appellant                                    Decided:  December 2, 2022

* * * * *

James J. VanEerten, Ottawa County Prosecuting Attorney, and
Thomas A. Matuszak, Assistant Prosecuting Attorney, for appellee.

Brett A. Klimkowsky, for appellant.

* * * * *

**MAYLE, J.**

## I.      Introduction

**{¶ 1}** Following a jury trial, the defendant-appellant, Harry J. Terrell, was

convicted by the Ottawa County Court of Common Pleas of two counts of failing to

comply with an order or signal of a police officer, and two counts of felonious assault of a peace officer. The trial court then sentenced Terrell to serve seven to nine years in prison. On appeal, Terrell claims that the trial court violated his right to counsel or, alternatively, his right to represent himself. As set forth below, we affirm.

## II. Background

{¶ 2} On the evening of October 26, 2020, Terrell led police on a high speed chase along State Route 2 that began in Ottawa County and ended in Lucas County. At times during the 15-minute chase, which occurred during a rain storm, Terrell drove his vehicle into oncoming traffic at speeds that ranged between 80 and 120 miles per hour. The chase involved three separate law enforcement agencies but was led by a state trooper, whose lights and sirens were activated the entire time. At one point during the chase, Terrell drove his car into a residential area, backed up and "rammed" the trooper's vehicle. The chase ended when Terrell crashed his vehicle into a utility pole and slid into a canal. At the time he was apprehended, Terrell told police that he had "panicked."

{¶ 3} Terrell was charged with multiple felonies, including three separate offenses under R.C. 2921.331 ("Failure to comply with order or signal of police officer"), specifically: Sections (B) and (C)(5)(a)(ii), a felony of the third degree (Count 1); Sections (B) and (C)(5)(a)(i), a felony of the third degree (Count 2); and Sections (B) and (C)(4), a felony of the fourth degree (Count 3). Terrell was also charged with committing felonious assault against a peace officer, in violation of R.C. 2903.11(A)(2)

2.

and (D)(1)(a), a felony of the first degree (Count 4); trademark counterfeiting, in violation of R.C. 2913.34(A)(2) and (B)(3), a felony of the fifth degree (Count 5); and speeding, in violation of R.C. 4511.21(D)(1) and (P)(1), a minor misdemeanor (Count 6).

{¶ 4} Terrell initially accepted court-appointed counsel, attorney Howard C. Whitcomb III, who filed several pretrial motions on Terrell's behalf. On August 26, 2021, Terrell filed a *pro se* motion asking for a continuance to hire private counsel. Although that motion was denied, Whitcomb then filed a motion to continue on Terrell's behalf, seeking a continuance so that Terrell could hire "new counsel, [Antwan] Maddox, from Las Vegas, Nevada." The court granted the requested continuance on September 2, 2021.

{¶ 5} On September 15, 2021, Lord Antwan Maddox filed a notice of appearance, purporting to represent Terrell. The state then notified the trial court that Antwan Maddox was not actually licensed to practice law in Nevada, and he had not moved for pro hac vice admission in Ohio. On October 13, 2021, Whitcomb filed a motion to withdraw—which the trial court granted that same day—and the trial court struck Antwan Maddox's notice of appearance, stating that he is not an attorney licensed to practice in Ohio, and he had not been granted permission to appear pro hac vice.

{¶ 6} The trial court then held a pretrial conference on November 5, 2021—eleven weeks before trial—regarding "[Terrell's] request to represent himself." The transcript from that hearing is not part of the appellate record. According to his written "Waiver of

3.

Right to Counsel," Terrell was advised of his right to counsel (for hire or by appointment), his right to represent himself, and the attendant risks of self-representation. In the waiver, Terrell also acknowledged that, if he "insist[ed] on representing [himself]," the court would "nonetheless appoint an attorney to serve as [his] advisory counsel," who would be available for "advice and assistance." The trial court appointed attorney James Reinheimer as standby counsel.

{¶ 7} A few days later, someone named Kenneth Chloe filed a "Judicial Notice Special Appearance," and then subsequently filed a "Judicial Notice of Adjudicative Fact Special Appearance," both purporting to represent Terrell. On December 8, 2021, the trial court struck both documents because Kenneth Chloe is not an attorney licensed to practice in Ohio and he had not been granted permission to appear pro hac vice.

{¶ 8} On the day of trial, January 25, 2022, the state dismissed Counts 3, 5 and 6, leaving two counts of failure to stop and the felonious assault count to be tried (Counts 1, 2 and 4, respectively). The state then presented its case by calling the three law enforcement officers who were involved in the chase to testify and playing the dashcam video from the trooper's patrol car. Terrell testified on his own behalf. On direct examination, Terrell asserted that the court had no authority over him and demanded to be referred to as "Harry James Terrell El Bey" or "Harry Ali." Under cross-examination, Terrell would neither confirm nor deny that the voice heard on the police dashcam

4.

video—repeatedly saying "I panicked"—was his.  Following deliberations, the jury found Terrell guilty of all three counts.

{¶ 9} On March 7, 2022, the trial court held a sentencing hearing.  After finding that Counts 1 and 2 merged for purposes of sentencing, the trial court sentenced Terrell to serve three years in prison as to Count 1 and four to six years in prison as to Count 4, to be served consecutively to the sentence imposed in Count 1, for a total prison term of seven to nine years.  It also imposed a mandatory term of post-release control of two to five years.

{¶ 10} Terrell requested that the trial court appoint him appellate counsel, which was granted.  Through counsel, Terrell raises two assignments of error for our review:

> A. The Trial Court committed reversible error during the jury trial by infringing upon the Sixth Amendment right of Appellant to represent himself without having an unwanted standby counsel interloping in a manner which offends said right.

> B. The Trial Court alternatively committed reversible error by allowing Appellant to represent himself during the jury trial—albeit with standby counsel—insofar as Appellant did not knowingly, voluntarily, and intelligently waive Appellant's right to counsel.

### III.    Analysis

{¶ 11} In his first assignment of error, Terrell argues that the trial court "forced" "unwanted interference" through standby counsel upon him, and that his standby counsel

"did not take a passive role during the jury trial and instead acted as an interloper to such an extent that Appellant was deprived of his constituionally guaranteed right to represent himself." Terrell also argues that the trial court erred by permitting him to have hybrid representation during the trial—i.e., representation through his standby counsel, and through his own self representation.

{¶ 12} In his second assignment of error, Terrell argues that he did not knowingly, voluntarily, and intelligently waive his right to counsel, and the trial court therefore erred by allowing him to proceed pro se (with standby counsel) at the jury trial.

{¶ 13} We will address Terrell's assignments of error out of order, beginning with his second assignment of error.

### 1. Terrell's waiver of his right to counsel was made knowingly, voluntarily and intelligently

{¶ 14} Whether a defendant knowingly, intelligently, and voluntarily waived the right to counsel is an issue that we review de novo. *State v. Wright,* 6th Dist. Lucas No. L-20-1016, 2020-Ohio-6783, ¶ 15. De novo review is an independent review without deference to the trial court. *See Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147, 593 N.E.2d 286 (1992).

{¶ 15} "It is axiomatic that a criminal defendant has a right to counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, as well as a right to act as his own counsel during trial, if he so chooses." (Quotation omitted.) *Wright* at ¶ 16, citing *Faretta v. California*, 422

6.

U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).  The right to counsel, and waiver thereof, is also reflected in Crim.R. 44, which provides, in relevant part,

> (A) Counsel in Serious Offenses**.** Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent the defendant at every stage of the proceedings from their initial appearance before a court through appeal as of right, unless the defendant, after being fully advised of their right to assigned counsel, knowingly, intelligently, and voluntarily waives their right to counsel.

*See also State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus ("a defendant in a state criminal trial has an independent constitutional right of self-representation and * * * may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so.").

{¶ 16} There is a "strong presumption against waiver of the constitutional right to counsel."  *Gibson* at 377.  Therefore, the trial court has a "serious and weighty responsibility" to determine whether there has been an intelligent and competent waiver. *Id.*  "The fact that an accused may [say] that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility." *Id.* Rather, a "waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other

7.

facts essential to a broad understanding of the whole matter." *Id.,* quoting *Von Moltke v. Gillies*, 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed. 309 (1948). Moreover, in "serious offense" cases, a waiver of a right to counsel "shall be in writing." Crim.R. 44(C); *See also* Crim.R. 2(C) (Defining a "serious offense" as "any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months.").

{¶ 17} Turning to the facts of this case, Terrell argues that he "was of the incorrect impression that Mr. [Kenneth] Chloe could represent [him] and this [was] a significant reason—if not dispositive reason—as to why [he] wanted Attorney Whitcomb's [i.e. his appointed counsel's] representation to be terminated."

{¶ 18} The record does not support this argument. First, Terrell asked the trial court to remove his court-appointed attorney, Howard Whitcomb, because he wanted to hire Antwon Maddox, not Kenneth Chloe—who did not attempt to appear in this case until several days *after* Terrell had already signed the written waiver of counsel. There is absolutely no evidence to suggest that Terrell asked the trial court to remove Whitcomb so that Chloe could represent him. Second, to the extent that Terrell meant to refer to *Antwon Maddox* with respect to this argument, it is important to note that the trial court granted Whitcomb's motion to withdraw *and* struck Antwon Maddox's notice of appearance on October 13, 2021—i.e., a full 23 days before the hearing on November 5, 2021 regarding Terrell's request for self-representation. Accordingly, by the time of the

8.

November 5, 2021 hearing, Terrell was well aware that Antwon Maddox would not be allowed to represent him.

{¶ 19} Terrell also complains that the trial court should have "inquire[ed] further" at the November 5, 2021 hearing to ensure that he was "knowingly waiving his right to court-appointed counsel." Terrell did not, however, provide a transcript of the November 5, 2021 hearing for our review on appeal.

{¶ 20} The duty to provide a transcript for appellate review falls upon the appellant because it is the appellant who bears the burden of showing error by reference to matters in the record. *Knapp v. Edwards Lab'ys,* 61 Ohio St. 2d 197, 199, 400 N.E.2d 384 (1980); *see also* App.R. 9(B) (* * * "it is the obligation of the appellant to ensure that the proceedings the appellant considers necessary for inclusion in the record, however those proceedings were recorded, are transcribed * * * The appellant shall order the transcript in writing and shall file a copy of the transcript order with the clerk of the trial court"). "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Id.*

{¶ 21} Without a transcript from the November 5, 2021 hearing, we have no record on which to review Terrell's second assignment of error, and we must therefore presume that the trial court fulfilled its "serious and weighty responsibility" when it

9.

determined that Terrell made an intelligent and competent waiver. *Accord State v. Harden,* 2d Dist. Montgomery No. 23742, 2010-Ohio-5282, ¶ 4, 17 (In the absence of a transcript or suitable alternative, court must reject claim that defendant's "counsel was totally absent" and that defendant "did not waive [his] right to counsel."); *State v. Easley,* 9th Dist. Summit No. 25517, 2012-Ohio-455, ¶ 3 (Appellate court "unable to determine whether the municipal court deprived [the defendant] of his right to counsel because the record does not contain a transcript of the proceedings.").

{¶ 22} Moreover, given that Terrell was charged with "serious offenses," his waiver was required to be in writing—and it was. According to the written waiver, Terrell acknowledged his "right to an attorney" and conversely, his "right to represent [himself]," and he acknowledged a number of very specific "risks of self-representation." The waiver also provides,

> **L. WAIVER OF RIGHT TO LEGAL COUNSEL**.  In light of the facts above [including the maximum penalties and the risks of self-representation], and despite this Court's warnings that I should not represent myself in this case, I hereby knowingly, voluntarily, and intelligently waive my right to be represented by an attorney in this case; instead, I want to represent myself in this case.

**{¶ 23}** In short, there are simply no facts in the record to suggest that Terrell's waiver of counsel was unknowing, involuntary, or unintelligent. Terrell's second assignment of error is not well-taken.

### 2. The trial court did not violate Terrell's right to represent himself by appointing standby counsel.

**{¶ 24}** In his first assignment of error, Terrell claims that the trial court deprived him of his constitutional right to represent himself when it "forced standby counsel upon [him]." We review a trial court's denial of a request for self-representation, asserted prior to trial, de novo. *State v. Clark,* 5th Dist. Muskingum No. CT2018-0006, 2018-Ohio-4789, ¶ 43.

**{¶ 25}** The term "standby representation" refers to counsel who "assists an otherwise pro se defendant only upon that defendant's request or if the defendant is unable to or decides not to continue pro se." *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 50, fn.2, citing *State v. Martin,* 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 28-29. Once the right to counsel is properly waived, trial courts are permitted to appoint standby counsel to assist the otherwise pro se defendant. The United States Supreme Court first illustrated the idea of "standby counsel," in a footnote in *Faretta v. California*: "Of course, a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that

11.

termination of the defendant's self-representation is necessary." *Faretta,* 422 U.S. at 834, 95 S.Ct. 2525, 45 L.Ed.2d 562, fn. 46.

{¶ 26} On appeal, Terrell complains that he made it "crystal clear" to the trial court that he did not want "[Standby Counsel] Reinheimer to act as his attorney." Indeed, on the day of trial, Terrell specified that he did not want Reinheimer to serve as "my attorney, [and] I don't want him on my case" or even to be "in the courtroom." In response, the trial court advised Terrell that Reinheimer was there "at [the court's] request," that the jury would be instructed that Reinheimer was acting as "stand-by counsel," which "is not making him your lawyer. It is not making him responsible for you or you responsible for him." The court elaborated that Terrell need "[not] have * * * any conversations with [Reinheimer]" unless Terrell wanted to do so.

{¶ 27} The trial court's statements are fully consistent with the law. Moreover, although Terrell complains that the court had "actual knowledge" that he did not want standby counsel, it is well-established that a trial court may appoint standby counsel even without a defendant's consent. *McKaskle v. Wiggins,* 465 U.S. 168, 178, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), citing *Faretta.* Accordingly, the trial court's appointment of Reinheimer to act as standby counsel, without more, did not offend Terrell's right to self-representation.

{¶ 28} Terrell also argues that Reinheimer exceeded the bounds of standby counsel by "actively participat[ing] [in] the jury trial to such an extent that it deprived

12.

Terrell of the right to represent himself." Specifically, Terrell complains that Reinheimer presented the opening statement, made numerous objections and then cross-examined the state's witnesses, moved for an acquittal, stipulated to the admissibility of the state's evidence, and presented a closing argument.

{¶ 29} But, although Terrell initially objected to Reinheimer's participation at trial, the record is clear that Terrell later acquiesced to Reinheimer's full representation. According to the transcript, Reinheimer and Terrell had a discussion "off the record" as jury selection was about to begin, which then moved to a "private room." Afterward, Reinheimer told the court that Terrell had "asked [him] to assist * * * with jury selection." And, after voir dire, Reinheimer confirmed that he was "going to continue assisting" with the trial. The court advised Terrell that "the fact that Mr. Reinheimer is assisting does not exclude you from any of these meetings that we have," and Terrell replied, "I understand." Reinheimer continued to represent Terrell for the remainder of trial—by, among other things, making opening and closing statements, examining witnesses, making objections and stipulations, and moving for an acquittal—without any comment or objection from Terrell.

{¶ 30} "Even if a defendant has made an unequivocal and explicit request for self-representation, a defendant may later waive that request by acquiescing in counsel's representation." *Obermiller* at ¶ 31. And, where "the record definitively demonstrates [that] a defendant abandoned his request to represent himself * * * there is no violation of

the Sixth Amendment right to self-representation." *State v. Cook,* 5th Dist. Stark No. 2015CA000900, 2016-Ohio-2823, ¶ 92; *See, e.g. Clark* at ¶ 48 (Defendant found to have "waived the request to represent herself because she consented to [appointed counsel's] representation, did not renew her request to represent herself, and permitted counsel to act on her behalf at trial.").

{¶ 31} Here, although Terrell complains on appeal that Reinheimer's actions amounted to "unwanted interference," the record plainly establishes otherwise. That is, Terrell asked Reinheimer "to assist him" in the early moments of the trial, and once Terrell acquiesced to that representation, it continued for the duration. Terrell never objected or otherwise expressed any misgivings about Reinheimer's role. To the contrary, the transcript reveals that Reinheimer's assistance was welcomed, as evidenced by their private consultations and the absence of any disagreements or complaints. Based upon these facts, we find that Terrell waived any right to self-representation by accepting the full assistance of Reinheimer at trial. *Accord State v. Kirk*, 8th Dist. Cuyahoga No. 108136, 2019-Ohio-4890, ¶ 28.

{¶ 32} Terrell also complains that Reinheimer "admonished" him by instructing him to "sit down" during the trial. But, as we have just concluded, Terrell was being represented by Reinheimer at the time—and, therefore, Terrell had no authority to personally address the court or jury. Further, Terrell fails to argue, much less to show, how Reinheimer's comments affected the outcome of the trial.

14.

{¶ 33} Finally, Terrell argues that the trial court "permitted legally impermissible 'hybrid representation'" when it allowed Reinheimer to represent him simultaneously with Terrell's own "self-representation."

{¶ 34} "'Hybrid representation differs from standby representation in that' in hybrid representation, 'the defendant and counsel act as co-counsel, sharing responsibilities in preparing and conducting trial,' whereas in standby representation, counsel assists an otherwise pro se defendant only upon that defendant's request or if the defendant is unable to or decides not to continue pro se." *Obermiller* at ¶ 50, fn. 2, quoting *Martin* at ¶ 28, 29. A defendant has no right to hybrid counsel. *Martin* at ¶ 31.

{¶ 35} Again, we note that Terrell did not object to Reinheimer's representation during the trial. Accordingly, we must review his argument for plain error. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." For plain error to exist:

> First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights" * * * [and] affected the outcome of the trial.

(Internal citations omitted.) *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Plain error "is to be taken with the utmost caution, under exceptional

circumstances, and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "[T]he accused bears the burden of proof to demonstrate plain error on the record * * *." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22.

{¶ 36} Although Reinheimer conducted the vast majority of the defense in this case, Terrell did participate at two distinct times during the trial: first, when he requested to present his "affidavit of truth" to the jury, and second, when Terrell testified without Reinheimer's assistance. While Terrell argues that the court ought not to have allowed him to simultaneously assert his rights while also being represented by counsel, he fails to identify how these two purported instances of hybrid-representation may have affected the outcome of his trial. Simply put, Terrell does not articulate (let alone develop) any plain-error arguments, and this court will not conduct a prejudice analysis on Terrell's behalf. *Accord State v. Yeager*, 9th Dist. Summit Nos. 28604, 28617, 2018-Ohio-574, ¶ 17. Because Terrell has not shown that any alleged hybrid-representation that may have occurred affected the outcome of his trial, we find that no plain error exists.

{¶ 37} For all of these reasons, we find that Terrell's right to represent himself was not violated, and his first assignment of error is not well-taken.

### IV.    Conclusion

{¶ 38} There is no evidence in the record on appeal to indicate that Terrell's waiver of his right to counsel was not knowingly, voluntarily, and intelligently made.

Likewise, because the record definitively demonstrates that, once the trial began, Terrell abandoned his request to represent himself, there was no violation of his Sixth Amendment right to self-representation. Accordingly, Terrell's assignments of error are found not well-taken, and the March 8, 2022 judgment of the Ottawa County Court of Common Pleas is affirmed. Pursuant to App.R. 24, Terrell is ordered to pay the costs associated with this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.       _____
                                             JUDGE

Christine E. Mayle, J.

Myron C. Duhart, P.J.       _____
CONCUR.                                              JUDGE

_____
                                             JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.