[Cite as *State v. Hawks*, 2025-Ohio-5407.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 25 CAA 03 0023 |
| Plaintiff - Appellee | <u>Opinion and Judgment Entry</u> |
| -vs- | Appeal from the Delaware County Court of Common Pleas, Case No. 24 CRI 10 0573 |
| ALEX HAWKS | Judgment: Affirmed |
| Defendant – Appellant | Date of Judgment Entry: December 3, 2025 |

**BEFORE:** Craig R. Baldwin, William B. Hoffman, Kevin W. Popham, Appellate Judges

**APPEARANCES:** Melissa A. Schiffel Delaware County Prosecuting Attorney, Katheryn L. Munger, Assistant Prosecuting Attorney, for Plaintiff-Appellee; April F. Campbell, for Defendant-Appellant

OPINION

*Hoffman, J.*

**{¶1}** Defendant-appellant Alex Hawks appeals the judgment entered by the Delaware County Common Pleas Court convicting him following bench trial of telecommunications harassment (R.C. 2917.21(A)), and sentencing him to eleven months of incarceration. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** Appellant and the victim in the instant case were divorced in 2023. They had a shared parenting plan regarding their children, which required the Appellant and the victim to communicate through Our Family Wizard.

**{¶3}** Appellant was convicted of telecommunications harassment in municipal court on January 30, 2024, regarding the same victim. A no contact order was issued which provided Appellant was only to contact the victim through Our Family Wizard, and was only to contact her regarding their children.

**{¶4}** Within hours of his conviction, Appellant began contacting the victim through Our Family Wizard regarding matters unrelated to the children. Despite the no contact order, Appellant messaged the victim, "So what happened to me today doesn't change anything between us. The way we've been communicating up to today has been working for us, so let's keep it up! Again, please forgive me for the crap I caused you. I didn't know what it was doing to you. I truly am sorry for this!" Tr. 42. The victim was not sure what to think when she read the message, because on the same day Appellant was told not to communicate with her, he indicated he was still going to communicate with her.

**{¶5}** Appellant continued to persistently message the victim about matters unrelated to the children. On February 14, 2024, he asked her to "chat" so he would not have to type out a message. She declined to chat, and asked him to message. He responded he wished she would stop pushing the narrative she had been trying to push on him for too long, and the things she believed about him were not true. The victim responded what he said was not true. The next day, Appellant messaged the victim, "I'm also going to need my North Face vest back, and for you to finally move on with your lover boy. Give him some kids, start a real family with him, and let me have mine. Let our kids have me, their father, in their lives." Tr. 51.

**{¶6}** On February 16, 2024, Appellant again messaged the victim, stating the victim had abused him and the kids for too long, and accusing her of attempting to put him in jail because she is "high conflict" and addicted to being a victim. Tr. 52. After messaging about the children's schedule in relation to the holiday weekend, he then messaged the victim she had been "sick" since she gave birth, her parents are also sick, and they all need help. Tr. 54.

**{¶7}** Three days later, Appellant messaged the victim about her representation in municipal court she had PTSD. He acknowledged the victim stated in court his telecommunications with her had caused her unwanted stress and pain and claimed he wanted to help her. The victim did not interpret this message as a genuine offer of help, but rather felt he was trying to talk down to her. The same day, Appellant messaged the victim to ask why his name was not on the birth certificate of one of the children. Because he was specifically asking about the children, the victim responded the next day, stating

she had no clue why his name was not on the birth certificate.  She asked Appellant to stick to messaging only about the children and their schedule.

{¶8}    On February 23, 2024, Appellant messaged the victim again, telling her she was not thinking clearly and her moral compass was off.  He told her "dementia comes early in your side family; so there's that that you can count on in due time."  Tr. 61.

{¶9}    Appellant continued to message the victim about matters other than the children through September 18, 2024.  He was indicted by the Delaware County Grand Jury with one count of telecommunications harassment on October 3, 2024, a felony of the fifth degree by virtue of his prior conviction of telecommunications harassment in the municipal court on January 30, 2024.

{¶10}  The case proceeded to bench trial in the Delaware County Common Pleas Court.  The night before trial, Appellant filed a motion to continue.  On the morning of trial, counsel represented because of the community service hours Appellant was required to complete from his municipal court conviction, counsel had not been able to meet with Appellant the weekend prior to trial to discuss the case.  The trial court overruled the motion to continue, noting because this was a bench trial rather than a jury trial, she would give counsel leeway by way of recesses to speak with his client.

{¶11}  Following bench trial, the trial court found Appellant guilty and sentenced him to eleven months of incarceration.  It is from the March 19, 2025 judgment of the trial court Appellant prosecutes his appeal, assigning as error:


I.  THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING HAWKS'S MOTION TO CONTINUE HIS TRIAL.

II. THE STATE'S EVIDENCE THAT HAWKS COMMITTED TELEPHONE HARASSMENT WAS LEGALLY INSUFFICIENT AS A MATTER OF LAW.

I.

{¶12} In his first assignment of error, Appellant argues the trial court erred in denying his motion to continue, and as a result, he was denied the effective assistance of counsel.  We disagree.

{¶13} We review a trial court's decision to deny a request for a continuance for abuse of discretion. *Hamad v. Hamad*, 2013-Ohio-2212. ¶ 13 (10th Dist.), *citing Young v. Young,* 2012-Ohio-4377, ¶ 6 (10th Dist.). "[A]buse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). When examining a trial court's denial of a motion for a continuance, a reviewing court "must weigh any potential prejudice to the defendant against a court's right to control its own docket and the public's interest in the efficient dispatch of justice." *State v. Woods*, 2010-Ohio-1586, ¶ 24, *citing State v. Unger,* 67 Ohio St.2d 65, 67(1981). Factors to consider when reviewing a motion for a continuance include, but are not limited to, the following: "the length of delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to

the request for a continuance; and other relevant factors, depending on the unique facts of each case." *Woods* at ¶ 24, *quoting Unger* at 67-68.

**{¶14}** Generally, a properly licensed attorney practicing in this state is presumed to be competent. *State v. Lytle*, 48 Ohio St. 2d 391, 396-397 (1976). However, in rare situations where counsel has done nothing more in the preparation of the case than to be a warm body, prejudice is presumed. *State v. Biggers,* 118 Ohio App. 3d 788, 790, *citing United States v. Cronic*, 466 U.S. 648, 659-660 (1984).

**{¶15}** Regarding the motion to continue, counsel made the following statement on the record:

> Well, again, Your Honor, the principal reason we're seeking this continuance is Mr. Hawks has been under a significant obligation to complete community service hours for the municipal court. This is a result of a hearing that took place in front of Judge Rohrer on the 20th of January. He was ordered to do some additional community service hours or spend some time in jail. That has been consuming a tremendous amount of his available hours when he's not dealing with me, childcare, or work issues.
>
> I will represent to the Court that we had planned to speak or meet several times over the weekend. We were not able to do that. In addition to the fact that we do have a witness that I have not had an opportunity to speak with either as it pertains with their specific knowledge. I think that Mr. Hawks has been quite distracted by his – and, again, I understand that is a

situation largely of his own creation, but it does not change the fact that he has not been able to effectively communicate with me recently.

Now we've had a number of months to prepare for this. However, I don't know any attorney who would not be spending a lot more focus immediately preceding trial on preparing for this matter. And his inability to meet with me due to the fact that he must complete additional service hours and the fact that he's mentally distracted I think is seriously interfering in his ability to be fairly represented by me due to our lack of communications and meeting at this point.

In addition to, as I've cited, the fact we do have two additional witnesses and that was a misunderstanding between Mr. Hawks and myself regarding the importance of the individuals that were –

THE COURT: But we knew about those last week. And they're under subpoena and my understanding is they will be available this afternoon.

Mr. SOON: They are not under subpoena but they will be available.

**{¶16}** Tr. 6-7.

**{¶17}** The trial court noted the community service was not a surprise. Because this was a bench trial, the trial court stated, "We can take it as slow as we need to, but my intention is to start this trial today and hopefully end it in a timely manner." Tr. 8. While the trial court understood counsel's concerns, the trial court told counsel she was willing to allow counsel to take breaks and recesses as necessary during the trial.

{¶18} We find the trial court did not abuse its discretion in overruling Appellant's motion to continue. The issue which led to Appellant's inability to communicate with counsel was of his own making and was not a sudden emergency unknown to Appellant. The trial had been continued from December of 2024 to February of 2025. The Friday before the start of trial, the parties were present in court discussing the trial, yet Appellant did not move to continue at that time. Tr. 8.

{¶19} We further find Appellant was not forced to proceed with ineffective assistance counsel, and this is not a case where prejudice should be presumed. Counsel did not represent he was wholly unprepared to proceed, but rather represented he had been unable to finish preparations over the weekend due to Appellant's inability to meet with him. The trial court offered counsel leeway by way of recesses and breaks as necessary to ensure he could adequately represent Appellant. This was not a case where counsel failed to prepare; rather, counsel's inability to finalize preparations the weekend before trial was caused by a community service obligation of Appellant's, of which Appellant was well aware prior to the weekend before trial.

{¶20} We find the trial court did not abuse its discretion in overruling Appellant's motion to continue, and Appellant was not denied the effective assistance of counsel by the trial court's denial of his motion to continue.

{¶21} The first assignment of error is overruled.

II.

{¶22} In his second assignment of error, Appellant argues the evidence was insufficient to support a conviction of telephone harassment. He specifically argues the

evidence was insufficient to demonstrate his purpose was to harass, intimidate, or abuse the victim.  We disagree.

{¶23}  An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

{¶24}  Appellant was convicted of telecommunications harassment in violation of R.C. 2917.21(A):

> (A) No person shall knowingly make or cause to be made a telecommunication, or knowingly permit a telecommunication to be made from a telecommunications device under the person's control, to another, if the caller does any of the following:
>
> (1) Makes the telecommunication with purpose to harass, intimidate, or abuse any person at the premises to which the telecommunication is made, whether or not actual communication takes place between the caller and a recipient[.]

{¶25}  This Court discussed the "purpose" element of R.C. 2917.21(A) in *State v. White*, 2025-Ohio-306, ¶ 15:

The telecommunications-harassment statute "focuses on the caller rather than on the content of the speech; it is the intent with which the call is made that establishes the criminality of the conduct." *Id*. at ¶6. The inquiry is not whether the recipient was in fact abused, intimidated, or harassed by the telecommunication, but whether the purpose of the caller was to abuse, intimidate, or harass the recipient. *Id*. "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "In the absence of direct evidence, a defendant's intent to abuse, [intimidate], or harass may be established by the surrounding facts and circumstances." *Golga* at ¶6.

**{¶26}** In the instant case, there was no direct evidence of Appellant's purpose. However, from the surrounding facts and circumstances, we find a rational trier of fact could find Appellant's purpose was to intimidate or harass the victim. Appellant was convicted of telecommunications harassment against this same victim on January 30, 2024. During those proceedings, the victim stated his messages caused her to have PTSD. A no contact order was put in place allowing Appellant only to contact the victim regarding the children. In spite of this, Appellant immediately messaged the victim expressing an intention to ignore the no contact order and continue to message her as he had prior to his first conviction. Appellant continued to contact the victim repeatedly

regarding personal matters outside of their shared parenting of the children, including commentary on her current relationship, her PTSD, and the recurrence of dementia in her family. Both the volume and the content of the messages Appellant sent the victim are evidence from which the trier of fact could conclude Appellant's purpose in sending the messages was to intimidate or harass the victim. We find the judgment of conviction was supported by sufficient evidence.

{¶27} The second assignment of error is overruled.

{¶28} The judgment of the Delaware County Common Pleas Court is affirmed. Costs are assessed to Appellant.


By: Hoffman, J.

Baldwin, P.J. and

Popham, J. concur