[Cite as *State v. White*, 2025-Ohio-306.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. Michael D. Hess, J. |
| Plaintiff-Appellee | Hon. Jason P. Smith, J. |
| -vs- | Judges Hess and Smith Sitting by Assignment by the Supreme Court of Ohio |
| PATRICIA JO WHITE | Case No. 2024CA00044 |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDINGS: Appeal from the Stark County Court of Common Pleas, Case No. 2023CR1792

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: January 29, 2025

APPEARANCES:

For Plaintiff-Appellee

KYLE L. STONE
Prosecuting Attorney
Stark County, Ohio

LISA A. NEMES
Appellate Division Chief
Assistant Prosecuting Attorney
110 Central Plaza South, Suite 510
Canton, Ohio 44702-1413

For Defendant-Appellant

D. COLEMAN BOND
116 Cleveland Avenue, N.W., Suite 600
Canton, Ohio 44702

*Hoffman, P.J.*

**{¶1}** Defendant-appellant Patricia Jo White appeals the judgment entered by the Stark County Common Pleas Court convicting her following jury trial of telecommunications harassment (R.C. 2917.21(A)(1) and/or (5)) and sentencing her to seven months incarceration in the Stark County Jail. Plaintiff-appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND CASE

**{¶2}** Officer Todd Gillilan has served on the Canton Police Department for 23 years. Since 2020, Officer Gillilan has held the role of mental health liaison, working to address the high volume of mental health issues which present to Canton police and to city officials.

**{¶3}** In July of 2023, Officer Gillilan was on bereavement leave. The police captain called Officer Gillilan about Appellant, who was sending numerous emails on a daily basis to the captain, the police chief, the safety director, the mayor, the sheriff, and other city officials. The captain was concerned Appellant's behavior was escalating, which involves behavior related to a mental health issue. Appellant expressed concern Aultman Hospital was engaged in child trafficking.

**{¶4}** When Officer Gillilan returned to work, he began investigating Appellant's behavior. He reviewed the emails and confirmed a link between Appellant and the email address from which the emails were sent. Officer Gillilan emailed Appellant on July 15, telling her if she did not stop making false accusations on social media platforms, she would be charged with telecommunications harassment, as she had been in 2020. Appellant's behavior did not cease, and she began emailing Officer Gillilan.

**{¶5}** Officer Gillilan attempted to get mental health assistance for Appellant, but she declined assistance and refused to stop sending emails.   Officer Gillilan continued to inform Appellant repeated emails would result in charges, and expressed his belief she needed help.  Appellant questioned the officer's qualifications to diagnose mental health issues.  She repeatedly emailed the officer asking what judge was signing her arrest warrant so she could have her friends conduct research on the judge.

**{¶6}** A warrant for Appellant's arrest was issued on July 19, 2023.  Appellant emailed Officer Gillilan throughout the day regarding warrants, probation, and questioning how anyone could make her stop emailing government officials.  Appellant continued to complain about Aultman Hospital engaging in trafficking.  Officer Gillilan repeatedly asked Appellant to discontinue her emails to public officials.

**{¶7}** Appellant was arrested on July 20, 2023, and her cell phone was confiscated to preserve evidence in the form of emails from the phone.  Appellant was released on July 21, 2023, and began emailing Officer Gillilan once again.  She needed contact numbers from her phone, and suggested the officer should "review his paperwork."  She claimed she would go to the police station to file a report for her stolen phone.  She sent a series of emails concerning her claim her phone was stolen to Officer Gillilan and other officials, stating she had not realized her arresting officer was a warlock until after she was released.  Appellant stated, "Sure got me going…I don't think I've ever screamed 'shut your fucking mouth' to a cop.  I know how powerful I am as a witch…I would likely bow to his powers however."  State's Ex. 3C.  She continued to send emails referring to the biggest sting operation in human history.  One email stated, "You people really aren't very smart when it comes to documentation.  Seriously…you should move

me, put me up in a luxury hotel…with a cute pool girl to look at…and then start figuring this shit out.  My guess is…if you don't…exposure is coming soon.  Might want to get in front."  *Id.*   Appellant suggested Officer Gillilan and others should turn themselves in to "General Flynn," to whom she claimed she tweeted a report of their psychological torture.

**{¶8}**   Appellant was indicted by the Stark County Grand Jury with two counts of telecommunications harassment.  The first count related to her emails sent from July 1, 2023 through July 18, 2023.  The second count related to her emails sent on or about July 21, 2023, after she had been arrested and released.  Both counts included a specification of a prior conviction of telecommunications harassment.

**{¶9}**   The case proceeded to jury trial in the Stark County Common Pleas Court. The jury found Appellant not guilty of the charge of telecommunications harassment from July 1, 2023 through July 18, 2023, but guilty of the charge related to conduct after her arrest.  The trial court convicted Appellant in accordance with the jury's verdict, and sentenced her to seven months incarceration in the Stark County Jail.  It is from the March 5, 2024 judgment of the trial court Appellant prosecutes her appeal, assigning as error:

I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT, AND THE CONVICTION MUST BE REVERSED.

II. THE APPELLANT'S CONVICTION MUST BE REVERSED AS THE CONDUCT OF APPELLANT WAS CONSTITUTIONALLY PROTECTED FREE SPEECH, AND R.C. 2917.21 CANNOT BE APPLIED TO APPELLANT'S SPEECH IN THIS CASE.

III. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HER RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

I.

**{¶10}** In her first assignment of error, Appellant argues her conviction was not supported by sufficient evidence. She specifically argues the State did not present evidence she acted with purpose to harass Officer Gillilan, a necessary element of R.C. 2917.21(A)(1). While she concedes she continued to email Officer Gillilan after he told her to stop, satisfying the elements of R.C. 2917.21(A)(5), she argues because she used his professional and not his personal email address, he did not have the right to tell her to stop sending emails.

**{¶11}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

**{¶12}** Appellant was convicted of telecommunications harassment in violation of R.C. 2917.21(A)(1) and/or (5):

(A) No person shall knowingly make or cause to be made a telecommunication, or knowingly permit a telecommunication to be made

from a telecommunications device under the person's control, to another, if the caller does any of the following:

(1) Makes the telecommunication with purpose to harass, intimidate, or abuse any person at the premises to which the telecommunication is made, whether or not actual communication takes place between the caller and a recipient;

(5) Knowingly makes the telecommunication to the recipient of the telecommunication, to another person at the premises to which the telecommunication is made, or to those premises, and the recipient or another person at those premises previously has told the caller not to make a telecommunication to those premises or to any persons at those premises[.]

{¶13} Appellant first argues pursuant to R.C. 2917.21(A)(1), the State failed to prove she sent emails to Officer Gillilan with purpose to harass, intimidate, or abuse him. She argues her repeated emails were an attempt to communicate with him regarding her concerns about child trafficking, and her need to recover her cell phone after her arrest.

{¶14} In support of her argument, Appellant cites *State v. Golga,* 2024-Ohio-1410 (9th Dist.). In that case, the defendant's water was shut off for nonpayment. He called the water department eight times over the course of 26 minutes, screaming, using profanity, and demanding his water service be restored. The court found there was no

evidence of purposeful intent to harass, intimidate, or abuse on the part of the defendant, because his actual purpose was to have his water service restored. *Id.* at ¶8-10.

**{¶15}** The telecommunications-harassment statute "focuses on the caller rather than on the content of the speech; it is the intent with which the call is made that establishes the criminality of the conduct." *Id.* at ¶6. The inquiry is not whether the recipient was in fact abused, intimidated, or harassed by the telecommunication, but whether the purpose of the caller was to abuse, intimidate, or harass the recipient. *Id.* "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "In the absence of direct evidence, a defendant's intent to abuse, [intimidate], or harass may be established by the surrounding facts and circumstances." *Golga* at ¶6.

**{¶16}** Appellant was convicted of telecommunications harassment solely with regard to emails sent beginning July 21, 2023, after her initial arrest. In the emails sent after her arrest, while Appellant continued to maintain Aultman Hospital was engaged in trafficking and inquired after her cell phone, her emails also accused her arresting officer of being a warlock, referred to herself as a witch, accused police of engaging in a sting operation, and threatened to expose the police with documentation unless she was put up in a hotel with a cute pool girl to look at. She also claimed she had tweeted about psychological torture on the part of police. From this evidence, the jury could find Appellant acted with purpose to harass, intimidate, or abuse Officer Gillilan. We find the conviction is supported by sufficient evidence.

{¶17} Appellant also argues the officer did not have the right to tell her to stop contacting him in his official capacity in regard to legitimate concerns or issues, and thus the State did not present sufficient evidence to convict her under R.C. 2917.21(A)(5). We disagree. As discussed above, Appellant concedes she continued to email the officer after he told her to stop. However, her emails as set forth earlier in this opinion did not all attempt to raise what she believed to be legitimate concerns over trafficking, warrants for her arrest, and the return of her cell phone, but rather accused the police of witchcraft and threatened action against the police if they did not put her up in a hotel. We find the fact the emails were sent to Officer Gillilan's professional email account rather than to his personal email account to be a distinction without a difference in this case. Nothing in the telecommunications harassment statute prohibits prosecution for contacting a public official only in a professional capacity, if the defendant's conduct otherwise meets the definition of telecommunications harassment. We find the State presented sufficient evidence from which the jury could find Appellant continued to email Officer Gillilan after he requested she stop.

{¶18} The first assignment of error is overruled.

II.

{¶19} In her second assignment of error, Appellant argues her conduct in contacting Officer Gillilan with regards to her concerns about trafficking and the return of her cell phone was constitutionally protected by the First Amendment.

{¶20} The State argues Appellant failed to raise this claim in the trial court. We disagree. Appellant filed a motion to dismiss in the trial court. While the primary thrust of the motion was the city of Canton was not a "person" within the meaning of the statute

and therefore the indictment did not charge an offense, Appellant also argued in her motion the First Amendment prohibited her prosecution for exercising her First Amendment right to criticize police performance and express her opinions. We find Appellant raised her First Amendment claim in the trial court, and we therefore do not apply the plain error standard as argued by the State.

{¶21} Appellant argues the statute is unconstitutional as applied to her. In an as-applied challenge, the challenger contends the statute's application violates his or her constitutional rights under the circumstances of a particular case. *United States v. Christian Echoes Natl. Ministry, Inc.,* 404 U.S. 561, 565, (1972).

{¶22} In considering a claim R.C. 2917.21 was unconstitutionally overbroad on its face, the Eighth District Court of Appeals discussed the purpose of the statute in relation to the First Amendment:

> Kronenberg argues that the "statute prohibits constitutionally protected conduct that would otherwise be legal." She contends that the statute punishes a simple call for help and her right to free speech. We find her argument unpersuasive. The statute operates to prohibit people from purposely making abusive, threatening, or harassing telecommunications; it does not restrict protected speech. *See generally State v. Gibbs*, 134 Ohio App.3d 247, 730 N.E.2d 1027 (12th Dist. 1999) (finding R.C. 2917.21(A)(5) is not unconstitutionally over broad, even though statute restricts person's ability to make a telephone call). Indeed, Kronenberg does not have a constitutionally protected right to make a telephone call for the purpose of

harassing another person. R.C. 2917.21(B) is not over broad since the First Amendment does not protect the type of activity that Kronenberg committed.

**{¶23}**  *State v. Kronenberg*, 2015-Ohio-1020, ¶ 38 (8th Dist.).

**{¶24}**  In the instant case, Appellant was not prosecuted for the content of her speech, nor was she prosecuted for exercising her right to complain or express a constitutionally-protected opinion to a government official.  Rather, she was prosecuted for purposely making abusive, threatening, or harassing telecommunications.  As in *Kronenburg*, Appellant does not have a constitutionally protected right to send repeated emails for the purpose of harassing Officer Gillilan.

**{¶25}**  The second assignment of error is overruled.

III.

**{¶26}**  In her third assignment of error, Appellant argues her trial counsel was ineffective for failing to argue her conduct was constitutionally protected under the First Amendment at trial, and for failing to move to suppress evidence of her mental health issues.

**{¶27}**  A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d

373 (1989).  In other words, Appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  *Id.*

{¶28}  Appellant first argues while counsel raised a First Amendment claim in her motion to dismiss, counsel failed to pursue a First Amendment argument at trial, and counsel's failure to raise the issue at trial was ineffective.  For the reasons set forth in our discussion of Appellant's second assignment of error, we find Appellant has not demonstrated a reasonable probability of a change in the outcome had counsel raised a First Amendment claim at trial.

{¶29}  Appellant also argues counsel was ineffective for failing to move to suppress Officer Gillilan's testimony he was the mental health liaison for the City of Canton, thus implying he is assigned to interact with people who are mentally ill, as well as his testimony he found Appellant's concerns were delusional ideations resulting from mental illness.

{¶30}  Appellant sets forth no legal theory on which the evidence should have been suppressed.  Appellant's emails were admitted into evidence at trial, allowing the jury to form its own conclusion as to whether they were delusional as testified to by Officer Gillilan, or "legitimate concerns or criticism of the government," as Appellant argues in her brief.  Appellant has not demonstrated had counsel moved to suppress all suggestion of mental illness concerns in this case, the evidence would have been suppressed, nor has she demonstrated in the absence of such evidence, the result of her trial would have been different.  We find Appellant has not demonstrated a reasonable probability of a change

in the outcome had her counsel objected to all mention of mental illness in the instant case.

**{¶31}** The third assignment of error is overruled.

**{¶32}** The judgment of the Stark County Common Pleas Court is affirmed.

By: Hoffman, P.J.

Hess, J.

Smith, J.  concur