[Cite as *State v. Montgomery*, 2026-Ohio-1243.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

MARQUIS D. MONTGOMERY,

    DEFENDANT-APPELLANT.

CASE NO. 9-25-22

OPINION AND
JUDGMENT ENTRY

Appeal from Marion Municipal Court
Trial Court No. CRB 24 02276

Judgment Affirmed

Date of Decision:  April 6, 2026

APPEARANCES:

    *Howard A. Elliott* for Appellant

    *Jeff Ratliff* for Appellee

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Marquis D. Montgomery ("Montgomery"), appeals the July 14, 2025 judgment entry of sentence of the Marion Municipal Court.  For the reasons that follow, we affirm.

{¶2} The genesis of this case stems from a series of unwanted text messages that Montgomery sent to Ashtan Morrison ("Morrison"), the mother of his children, and her boyfriend, Cedrick Riley ("Riley").  After Montgomery repeatedly ignored explicit directives from Morrison and Riley as well as law enforcement to cease communication, Montgomery was charged on December 23, 2024 with telecommunications harassment in violation of R.C. 2917.21(A)(1), a first-degree misdemeanor.  Law enforcement attempted to serve Montgomery the summons and complaint; however, because he "became belligerent and refused to sign or take the criminal complaint [and] also did not let [law enforcement] explain the situation or the criminal complaint," law enforcement requested that an arrest warrant be issued. (Doc. No. 3).  Accordingly, the trial court issued a warrant on December 27, 2024.  Nevertheless, Montgomery voluntarily appeared for arraignment on December 30, 2024 and pleaded not guilty to the complaint, at which time the warrant was recalled.

{¶3} On April 25, 2025, Montgomery's trial counsel filed a motion requesting to withdraw from the representation due to a significant breakdown in communication.  After a hearing on April 28, 2025, Montgomery and his trial

counsel agreed to withdraw the motion, and Montgomery's trial counsel continued the representation.

{¶4} On May 6, 2025, Montgomery filed a motion requesting that the trial court continue the trial date scheduled for May 14, 2025 because he had not yet received subpoenaed records from T-Mobile. The trial court granted the motion and continued trial until June 4, 2025.

{¶5} On June 2, 2025, Montgomery's trial counsel filed a second motion to withdraw from the representation. In the motion, Montgomery's trial counsel noted that he

> came to Marion Municipal Court to meet with [Montgomery since he] refused to travel to Upper Sandusky for any meeting. Rather than meet and discuss strategy for Trial; [Montgomery] proceeded to state he wanted to file ethical complaints against [his trial counsel] as well as the Court. [Montgomery] indicated that he wanted [his trial counsel] to withdraw from this matter [and] that he would like a new attorney or potentially proceed Pro Se.

(Doc. No. 71). After conducting a hearing, the trial court permitted Montgomery to represent himself but ordered his trial counsel to remain as standby counsel.

{¶6} On June 3, 2025, Montgomery, pro se, filed a motion to dismiss the complaint, asserting insufficient service of process. The trial court denied Montgomery's motion prior to the commencement of trial.

{¶7} Following a jury trial on June 4, 2025, the jury found Montgomery guilty of the charge alleged in the complaint. On July 10, 2025, the trial court sentenced Montgomery to five years of community control sanctions, including 180

days in jail, with 170 days suspended conditioned on his compliance with his community control sanctions.[1]

{¶8} On July 23, 2025, Montgomery filed a notice of appeal. He raises five assignments of error for our review. For ease of our discussion, we will begin by addressing Montgomery's fourth assignment of error, followed by his first, third fifth, and second assignments of error.

### Fourth Assignment of Error

**The trial Court lacks jurisdiction to proceed since the complaint was never served upon the Defendant/Appellant making the trial Court proceedings a nullity requiring the conviction to be overturned and the matter remanded to the trial Court for further proceedings.**

{¶9} In his fourth assignment of error, Montgomery argues that the trial court erred by denying his motion to dismiss due to improper service. Specifically, he contends that the trial court lacked personal jurisdiction over him because the record fails to demonstrate that he was ever properly served with a copy of the complaint.

*Standard of Review*

{¶10} "'Jurisdiction is a prerequisite to a valid judgment.'" *State v. Thompson*, 2021-Ohio-642, ¶ 9 (3d Dist.), quoting *State ex rel. Post v. Speck*, 2010-Ohio-105, ¶ 10 (3d Dist.). "Appellate courts apply a de novo standard of review when determining whether a trial court had jurisdiction to render a decision." *Id.*,

---

[1] The trial court filed its judgment entry of sentence on July 14, 2025.

citing *State v. Stuber*, 2018-Ohio-2809, ¶ 13 (3d Dist.) ("We review de novo the existence of a trial court's subject-matter and personal jurisdiction."). "'De novo review is independent, without deference to the lower court's decision.'" *Id.*, quoting *State v. Hudson*, 2013-Ohio-647, ¶ 27 (3d Dist.).

*Analysis*

{¶11} Section 10, Article I of the Ohio Constitution provides, in its relevant part, that an accused in a criminal action has the right "to demand the nature and cause of the accusation against him, and to have a copy thereof . . . ." "Under this provision, a criminal defendant is entitled to be served with a copy of the charging document." *State v. Neff*, 1994 Ohio App. LEXIS 367, *5 (11th Dist. Feb. 4, 1994). *See also State v. Harrison*, 2021-Ohio-4465, ¶ 20 (discussing the application of Crim.R. 4 and R.C. 2935.10). "Even though this is a constitutional right, it can be waived by the defendant." *Neff* at *5. *See also Stuber* at ¶ 18.

{¶12} "'Personal jurisdiction goes to the court's authority to render judgment against a party to an action.'" *Stuber* at ¶ 14, quoting *Cleveland v. Kutash*, 2013-Ohio-5124, ¶ 11 (8th Dist.). "A court acquires personal jurisdiction over a 'defendant when: (1) service of process is completed over the defendant, (2) the defendant voluntarily appears and submits to the court's jurisdiction, or (3) the defendant involuntarily submits to the court's jurisdiction.'" *Id.*, quoting *Kutash* at ¶ 11. "'[A] challenge to personal jurisdiction is waivable by the defendant's voluntary submission at an appearance or by entering a plea.'" *Id.*, quoting *Kutash*

at ¶ 12. *See also State v. Pizzuto*, 2018-Ohio-146, ¶ 22 (5th Dist.) (noting that it is well established that, "[w]hen a defendant appears in the trial court and enters a plea of not guilty to charges, he waives any objection to the court's exercise of personal jurisdiction over him").

{¶13} Decisively, the trial court had personal jurisdiction over Montgomery since he voluntarily appeared at arraignment and pleaded not guilty to the charge in the complaint. *Accord Stuber* at ¶ 18. In other words, by appearing and entering a plea to the charge in the complaint, Montgomery waived any objection to the trial court's exercise of personal jurisdiction over him. *Accord Pizzuto* at ¶ 22. Consequently, the trial court did not err by denying Montgomery's motion to dismiss the complaint.

{¶14} Montgomery's fourth assignment of error is overruled.

**First Assignment of Error**

**The trial Court committed error by forcing the Defendant/Appellant to represent himself rather than to continue with counsel for which he had repeatedly expressed his dissatisfaction with his services. In doing so the Court did not properly advise the Defendant/Appellant or make inquiry of the Defendant/Appellant as to what it meant to proceed to represent himself and the conviction need[s] to be reversed and set aside.**

{¶15} In his first assignment of error, Montgomery argues that his waiver of the right to counsel was invalid because he was required to proceed pro se after the trial court declined to appoint substitute counsel. Specifically, he contends that his waiver was not knowingly, intelligently, and voluntarily made because the trial

court failed to conduct a sufficient inquiry to adequately advise him of the dangers and disadvantages of self-representation.

*Standard of Review*

**{¶16}** "We review de novo whether a defendant knowingly, voluntarily, and intelligently waived his right to counsel." *State v. Godley*, 2018-Ohio-4253, ¶ 9 (3d Dist.). Again, "[d]e novo review is independent, without deference to the lower court's decision." *Hudson*, 2013-Ohio-647, at ¶ 27 (3d Dist.).

*Analysis*

**{¶17}** "'The Sixth Amendment to the United States Constitution provides that an accused shall have the right "to have the Assistance of Counsel for his defense."'" *State v. Logan*, 2017-Ohio-8932, ¶ 34 (3d Dist.), quoting *State v. Owens*, 2008-Ohio-4161, ¶ 9 (3d Dist.), quoting the U.S. Const., amend. VI. "'The Sixth Amendment right to counsel extends to misdemeanor cases that can result in the imposition of a jail sentence.'" *State v. Boatwright*, 2020-Ohio-5068, ¶ 10 (7th Dist.), quoting *State v. Koons*, 2007-Ohio-4985, ¶ 13 (7th Dist.).

**{¶18}** "[T]he United States Supreme Court has also recognized that the Sixth Amendment right to the assistance of counsel implicitly embodies a 'correlative right to dispense with a lawyer's help.'" *State v. Martin*, 2004-Ohio-5471, ¶ 23, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942). "While a defendant has a right to counsel, the defendant may also waive that right when the

waiver is voluntary, knowing, and intelligent." *State v. Petaway*, 2006-Ohio-2941, ¶ 8 (3d Dist.).

{¶19} "Crim.R. 44 also addresses the appointment of counsel." *State v. Conard*, 2024-Ohio-1906, ¶ 13 (2d Dist.). "Under Crim.R. 44(B), the trial court *may* assign counsel to represent a defendant charged with a petty offense who is unable to obtain counsel." (Emphasis in original.) *Id.*, citing Crim.R. 44(A) (contrasting that defendants charged with a serious offense shall be assigned counsel "to represent the defendant at every stage of the proceedings" unless the right to counsel is waived). Further, Crim.R. 44(B), which governs the appointment of counsel in petty offense cases, provides that a defendant may not be sentenced "unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel."

{¶20} "'A petty offense is defined as "a misdemeanor other than a serious offense."'" *State v. Medford*, 2025-Ohio-140, ¶ 18 (3d Dist.), quoting *State v. Gerken*, 2023-Ohio-2244, ¶ 29 (6th Dist.), quoting Crim.R. 2(D). "'A serious offense is "any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months."'" *Id.*, quoting *Gerken* at ¶ 29, quoting Crim.R. 2(C). "'In petty offense cases, waiver of counsel shall be made in open court and recorded.'" *Id.*, quoting *Gerken* at ¶ 29, citing Crim.R. 22 (asserting that "[i]n petty offenses all waivers of counsel required by Rule 44(B) shall be recorded") and Crim.R. 44(C) (stating that "[w]aiver of counsel shall be in open

court and the advice of waiver shall be recorded as provided in Rule 22"). "'[I]n serious offense cases, the waiver shall be in writing, made in open court, and recorded.'" *Id.*, quoting *Gerken* at ¶ 29.

{¶21} "'"The requirements of Crim.R. 44 and 22 are mandatory, and failure to [substantially] comply with these procedures constitutes error."'" *State v. Thompson*, 2009-Ohio-185, ¶ 10 (3d Dist.), quoting *State v. Constable*, 2005-Ohio-1239, ¶ 31 (12th Dist.), quoting *Mason v. Krivinsky*, 1998 Ohio App. LEXIS 2659, 1998 WL 314384, *23 (12th Dist. June 15, 1998). *See also Akron v. Ragle*, 2005-Ohio-590, ¶ 9 (9th Dist.) (applying the substantial compliance standard to waivers of counsel in petty offense cases). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of . . . the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

{¶22} "'In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right.'" *Godley*, 2018-Ohio-4253, at ¶ 11 (3d Dist.), quoting *State v. Gibson*, 45 Ohio St.2d 399 (1976), paragraph two of the syllabus. *See also Ragle* at ¶ 9 (9th Dist.) (applying the same standard to petty offense cases). For a defendant's waiver of counsel to be valid, it must be made with a clear understanding of (1) the nature of the charges and any included statutory offenses; (2) the range of allowable punishments; (3) possible defenses and mitigating circumstances; and (4) all other facts essential to a broad

understanding of the entire matter. *Godley* at ¶ 11. However, there is *no* mandatory script or strict formula for advising a defendant of the dangers of self-representation. *Id.* Instead, the necessary inquiry is fluid and depends on case-specific factors, such as the stage of the proceeding, the complexity of the charge, and the defendant's education and overall sophistication. *Id.* In other words, the sufficiency of the trial court's inquiry depends on the *totality* of the circumstances of the case. *Id.*

{¶23} In this case, Montgomery contends that his decision to proceed pro se was not knowing, intelligent, or voluntary because it was precipitated by the trial court's refusal to appoint substitute counsel just days before trial. He further argues that the trial court's colloquy failed to cure this defect because it lacked the depth necessary to adequately advise him of the dangers of self-representation, the complexities of the charges, the allowable punishments, and his potential defenses. We disagree.

{¶24} Based on our review of the totality of the circumstances present in the record, we conclude that Montgomery knowingly, intelligently, and voluntarily waived his right to counsel. *See Logan*, 2017-Ohio-8932, at ¶ 36 (3d Dist.). Critically, the record reveals that the trial court substantially complied with the requirements of Crim.R. 44(B) by sufficiently inquiring (in open court) whether Montgomery fully understood and relinquished his right to counsel. *See Boatwright*, 2020-Ohio-5068, at ¶ 12 (7th Dist.) (explaining that a first-degree

misdemeanor carrying a maximum penalty of 180 days is a petty offense, meaning the defendant's waiver of counsel is not required to be in writing).

{¶25} Indeed, while the trial court refused Montgomery's eleventh-hour request for substitute counsel, it provided him the alternative of proceeding pro se with standby assistance. Importantly, the record reflects that, before accepting Montgomery's waiver, the trial court engaged in a thorough colloquy with Montgomery to ensure he understood the gravity of his decision. The trial court explicitly advised Montgomery of the charges, the potential penalties, and the strict requirement that he comply with the same procedural rules as an attorney. *See State v. Lee*, 2025-Ohio-875, ¶ 25 (5th Dist.) (noting that Ohio courts do not require trial judges to explain potential defenses or act as pseudo-counsel during a waiver colloquy). Furthermore, the trial court thoroughly cautioned him about the inherent dangers of self-representation and ensured that standby counsel remained present and available throughout the trial in case assistance was needed. *Compare Ragle*, 2005-Ohio-590, at ¶ 13 (9th Dist.). *See State v. Hackett*, 2020-Ohio-6699, ¶ 20 (noting that the discretionary appointment of standby counsel serves as a "great aid" to ensure that a self-representing defendant is "not left totally adrift"). Despite these clear warnings regarding the pitfalls of proceeding pro se, Montgomery unequivocally asserted his desire to represent himself.

{¶26} Moreover, the nature of the charge against Montgomery— telecommunications harassment, a first-degree misdemeanor—is relatively

straightforward and easily grasped. It does not involve highly complex or arcane legal concepts that would preclude a layperson from understanding the proceedings. *Compare Ragle* at ¶ 14 (determining that the defendant's waiver was valid where the trial court sufficiently explained the dangers of self-representation and the misdemeanor charge "was in no way complicated"). Furthermore, because Montgomery sought to represent himself just two days before trial, he had already benefited from the assistance of appointed counsel throughout the discovery and pretrial phases, giving him a broad understanding of the State's evidence and the overall matter. *Compare State v. Yeager*, 2018-Ohio-574, ¶ 8 (9th Dist.).

{¶27} For these reasons, we conclude that Montgomery knowingly, intelligently, and voluntarily waived his right to counsel.

{¶28} Montgomery's first assignment of error is overruled.

### Third Assignment of Error

**The trial Court improperly allowed hybrid representation in this matter when they permitted the standby counsel to act as counsel for the pro se Defendant/Appellant, requiring the convictions to be set aside and the matter remanded to the trial court for further proceedings.**

{¶29} In his third assignment of error, Montgomery argues that the trial court erred by improperly permitting hybrid representation during the jury trial. In particular, he contends that the trial court should not have permitted his standby counsel to argue the Crim.R. 29 motion for acquittal on his behalf while he was otherwise exercising his right to self-representation.

-12-

*Standard of Review*

**{¶30}** Because the appointment and scope of standby counsel are matters left to the trial court's sound discretion, we review a trial court's decisions concerning hybrid representation for an abuse of discretion. *Hackett*, 2020-Ohio-6699, at ¶ 20; *State v. Lucas*, 2025-Ohio-1918, ¶ 58 (4th Dist.). *But see State v. McAlpin*, 2022-Ohio-1567, ¶ 65 (noting that an actual violation of a defendant's right to self-representation constitutes structural error). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

**{¶31}** However, a defendant who fails to object to standby counsel's specific participation during the proceedings forfeits all but plain error on appeal. *See State v. Terrell*, 2022-Ohio-4312, ¶ 35 (6th Dist.). Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To prevail on a claim of plain error, the appellant bears the burden of showing that an obvious deviation from a legal rule occurred and that, but for this error, the outcome of the trial would have been different. *Terrell* at ¶ 35. "Plain error 'is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice.'" *Id.*, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

*Analysis*

**{¶32}** While a criminal defendant has a constitutional right to self-representation, a trial court *may* appoint standby counsel to assist the pro se defendant and to assume representation if the termination of self-representation becomes necessary. *Hackett* at ¶ 9. *But see State v. Pinckney*, 2017-Ohio-2836, ¶ 6 (9th Dist.) ("There is no constitutional right to hybrid representation."). "Unlike hybrid representation—where the defendant and attorney act as co-counsel sharing trial duties—standby counsel assists an otherwise pro se defendant strictly upon request or in the event the defendant cannot continue self-representation." *Terrell* at ¶ 34.

**{¶33}** "[W]hen a court appoints standby counsel, there are limits on how actively standby counsel can be involved." *Hackett* at ¶ 10. "Instances where standby counsel is overly involved in the proceedings and functions essentially as co-counsel with the self-representing defendant—so-called 'hybrid representation'—pose several potential problems." *Id.* "First, hybrid representation creates confusion as to who is the ultimate decision-maker [and] may lead to ethical concerns for counsel if there is disagreement over trial strategy and presents courtroom-management challenges for the trial judge." *Id.* "Second, hybrid representation raises serious questions about whether the defendant is representing himself or is represented by counsel, because there is no clear boundary line between hybrid representation and self-representation [and] complicates the question

whether the defendant has waived the right to representation." *Id.* "And third . . . if standby counsel is too actively involved, a defendant's right to self-representation may be violated." *Id.*

{¶34} Nevertheless, "nothing prevents standby counsel from providing advice to a criminal defendant on evidentiary or procedural matters, so long as the involvement of standby counsel does not reach the level of 'unsolicited and excessively intrusive participation' that is at odds with a criminal defendant's right to self-representation." *Id.* at ¶ 20, quoting *McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984).

{¶35} In this case, Montgomery contends that the trial court improperly allowed his standby counsel to engage in hybrid representation by raising and arguing a Crim.R. 29 motion. However, because Montgomery did not object to standby counsel's participation, he waived all but plain error on appeal. Based on our review of the record, standby counsel's limited participation in the proceedings did not constitute plain error.

{¶36} To begin with, Montgomery failed to articulate any argument as to how standby counsel's presentation of the Crim.R. 29 motion affected the outcome of his trial, and we will not construct one for him. *See* App.R. 16(A)(7). *Compare Yeager*, 2018-Ohio-574, at ¶ 17 (9th Dist.); *Terrell*, 2022-Ohio-4312, at ¶ 36 (6th Dist.). Nevertheless, we see no resulting prejudice since Montgomery conducted the vast majority of his own defense, and standby counsel's isolated presentation of

a procedural motion did not transform the proceedings into an impermissible hybrid representation. Rather, standby counsel's presentation of the Crim.R. 29 motion constituted the exact type of assistance on procedural matters permitted. *See State v. McAlpin*, 2022-Ohio-1567, ¶ 309, citing *Hackett* at ¶ 61 (Stewart, J., concurring) (noting that standby counsel should assist in overcoming procedural or evidentiary obstacles and help ensure the defendant's compliance with basic courtroom procedure and protocol).

{¶37} Indeed, because the motion was argued outside the presence of the jury and properly tested the legal sufficiency of the State's evidence, standby counsel's limited participation was neither unsolicited nor excessively intrusive, and therefore did not compromise Montgomery's defense. *See Yeager* at ¶ 16-17 (rejecting a plain-error challenge to standby counsel's participation in arguing a Crim.R. 29 motion because the appellant failed to articulate how the hybrid representation prejudiced him or affected the outcome of the trial). Moreover, it is not apparent on the face of the record that there was any actual conflict between Montgomery and his standby counsel regarding the motion. *Accord id.* at ¶ 17. That is, because a Crim.R. 29 motion inherently benefits the defense, standby counsel's presentation of the motion did not undermine Montgomery's overarching trial strategy. Therefore, Montgomery's hybrid representation argument is without merit.

{¶38} Montgomery's third assignment of error is overruled.

**Fifth Assignment of Error**

**The conviction herein must be overturned because of the failure-of the State to meet its burden and provide sufficient evidence as to the essential elements of the offense of telephone harassment where the victim had made repeated telecommunication contacts to the Defendant/ Appellant and sufficient evidence to conclude improper contacts by the Defendant/Appellant, requiring the conviction to be set aside and the matter be remanded to the trial Court for dismissal of the action.**

{¶39} In his fifth assignment of error, Montgomery argues that his telecommunications harassment conviction is based on insufficient evidence. Specifically, he contends that the State failed to prove that he acted with the requisite purpose to harass, intimidate, or abuse the alleged victim.

*Standard of Review*

{¶40} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the

credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.). *See also State v. Berry*, 2013-Ohio-2380, ¶ 19 (3d Dist.) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

*Sufficiency of the Evidence*

**{¶41}** As an initial matter, the record reveals that Montgomery failed to renew his Crim.R. 29(A) motion at the conclusion of his case-in-chief or at the conclusion of all the evidence.

> In order to preserve the issue of sufficiency on appeal, this court has held that "[w]hen a defendant moves for acquittal at the close of the state's evidence and that motion is denied, the defendant waives any error which might have occurred in overruling the motion by proceeding to introduce evidence in his or her defense. In order to preserve a sufficiency of the evidence challenge on appeal once a defendant elects to present evidence on his behalf, the defendant must renew his Crim.R. 29 motion at the close of all the evidence."

*State v. Hurley*, 2014-Ohio-2716, ¶ 37 (3d Dist.), quoting *State v. Edwards*, 2004-Ohio-4015, ¶ 6 (3d Dist.). Based on this court's precedent, Montgomery's failure to renew his Crim.R. 29(A) motion at the conclusion of his case-in-chief or at the conclusion of all evidence waived all but plain error on appeal. *Id.*

**{¶42}** "However, '[w]hether a sufficiency of the evidence argument is reviewed under a prejudicial error standard or under a plain error standard is academic.'" *Id.* at ¶ 38, citing *Perrysburg v. Miller*, 2003-Ohio-4221, ¶ 57 (6th

Dist.), quoting *State v. Brown,* 2000 Ohio App. LEXIS 3132, *21 (2d Dist. July 14, 2000). "Regardless of the standard used, 'a conviction based on legally insufficient evidence constitutes a denial of due process, and constitutes a manifest injustice.'" *Id.*, quoting *Thompkins,* 78 Ohio St.3d at 386-87. Accordingly, we will proceed to determine whether the State presented sufficient evidence to support Montgomery's telecommunications harassment conviction. *See id.*

{¶43} Montgomery was convicted of telecommunications harassment in violation of R.C. 2917.21, which provides, in its relevant part, that

> [n]o person shall knowingly make or cause to be made a telecommunication, or knowingly permit a telecommunication to be made from a telecommunications device under the person's control, to another, if the caller . . . [m]akes the telecommunication with purpose to harass, intimidate, or abuse any person at the premises to which the telecommunication is made, whether or not actual communication takes place between the caller and a recipient.

R.C. 2917.21(A)(1).

{¶44} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). As used under R.C. 2917.21(A), "'[c]aller' means the person . . . who makes or causes to be made a telecommunication or who permits a telecommunication to be made from a telecommunications device under that person's control." R.C. 2917.21(G)(2).

{¶45} A "'[t]elecommunication' means the origination, emission, dissemination, transmission, or reception of data, images, signals, sounds, or other intelligence or equivalence of intelligence of any nature over any communications system by any method, including, but not limited to, a fiber optic, electronic, magnetic, optical, digital, or analog method." R.C. 2913.01(X). Likewise, a "'[t]elecommunications device' means any instrument, equipment, machine, or other device that facilitates telecommunication, including, but not limited to, a computer, computer network, computer chip, computer circuit, scanner, telephone, cellular telephone, pager, personal communications device, transponder, receiver, radio, modem, or device that enables the use of a modem." R.C. 2913.01(Y).

{¶46} "Although none of the individual terms 'abuse,' 'threaten,' or 'harass' have been statutorily defined within the meaning of R.C. 2917.21, "'[t]he fact that the statute does not place legal definitions on each of these terms demonstrates that the General Assembly intended to prohibit conduct that is easily definable by the common everyday meaning of these words.'"" *State v. Shuck*, 2020-Ohio-6989, ¶ 15 (9th Dist.), quoting *State v. Rasawehr*, 2020-Ohio-429, ¶ 29 (3d Dist.), quoting *State v. Stanley*, 2006-Ohio-4632, ¶ 13 (10th Dist.). "'Abuse' may be defined as '[t]o injure (a person) physically or mentally.'" *Id.*, quoting *Black's Law Dictionary* (11th Ed. 2019). A threat constitutes an expressed intention to inflict evil, injury, or damage on another person, usually as retribution or punishment, and broadly encompasses almost any expression of intent to harm someone else regardless of

whether the threatened act is itself criminal. *Id.* "Finally, 'harassment' may be defined as '[w]ords, conduct, or action (usu[ally] repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress to that person and serves no legitimate purpose; purposeful vexation.'" *Id.*, quoting *Black's Law Dictionary* (11th Ed. 2019).

{¶47} "The telecommunications-harassment statute 'focuses on the caller rather than on the content of the speech; it is the intent with which the call is made that establishes the criminality of the conduct.'" *State v. White*, 2025-Ohio-306, ¶ 15 (5th Dist.), quoting *State v. Golga*, 2024-Ohio-1410, ¶ 6 (9th Dist.). "The inquiry is not whether the recipient was in fact abused, intimidated, or harassed by the telecommunication, but whether the *purpose* of the caller was to abuse, intimidate, or harass the recipient." (Emphasis added.) *Id.* "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). *See Shuck* at ¶ 14 ("The terms 'intent' and 'purpose' are synonymous in the context of culpable mental states."). "'In the absence of direct evidence, a defendant's intent to abuse, [intimidate], or harass may be established by the surrounding facts and circumstances.'" *White* at ¶ 15, quoting *Golga* at ¶ 6.

**{¶48}** In support of his sufficiency-of-the-evidence challenge, Montgomery argues that a rational trier of fact could not have found that he made the telecommunications with the specific purpose to harass, intimidate, or abuse any victim in this case. That is, Montgomery contends that the State failed to establish the requisite criminal intent because Riley actively participated in and initiated portions of the exchange, demonstrating that the communications were mutual rather than unwanted. Furthermore, he asserts that the actual content of his messages was legally insufficient to constitute harassment, characterizing his statements as a mere threat of civil litigation rather than the type of abusive or intimidating conduct penalized by the statute.

**{¶49}** However, as an initial matter, Montgomery's argument that his messages did not contain inherently prohibited language misconstrues the nature of the offense. *See Shuck* at ¶ 16. While the use of specific words is not an element of the offense, the abusive content of his messages constitutes circumstantial evidence of his intent. *See id.* at ¶ 14. Viewing the surrounding facts and circumstances of Montgomery's messages in a light most favorable to the prosecution, a rational trier of fact could easily infer that Montgomery's underlying purpose was to harass, intimidate, or abuse the victims. *Compare State v. Pierce*, 2024-Ohio-5357, ¶ 22 (12th Dist.) ("Notwithstanding appellant's claim that his telecommunications were simply to express his dissatisfaction with the management and closure of the library, the substantial number of telecommunications and their

aggressive tone plainly evidenced appellant's purpose to harass and intimidate [the victim]").

**{¶50}** Moreover, beyond the nature of the messages themselves, the State presented evidence that Montgomery continued to contact Morrison and Riley with messages after receiving multiple, explicit warnings to stop. *See State v. Hawks*, 2025-Ohio-5407, ¶ 26 (5th Dist.). Specifically, Officer Devon Mallory ("Officer Mallory") of the Marion Police Department testified that he responded to the harassment complaint and personally observed both Morrison and Riley send text messages to Montgomery explicitly warning him to cease contact. *See Pierce* at ¶ 22 (noting that "[t]estimony from witnesses that a defendant was previously told not to call the recipient may also be evidence pertinent to the defendant's intent when placing the calls"). In addition to the warnings from the victims, Officer Mallory directly contacted Montgomery by phone to reiterate that he must stop communicating with both individuals. Despite receiving these clear, repeated directives from law enforcement and the victims themselves, Montgomery completely disregarded the warnings and continued to message Riley. (*See* State's Ex. 3); *Pierce* at ¶ 22 (explaining that, "[a]lthough a violation of R.C. 2917.21 does not require multiple communications, the fact that a defendant made numerous calls or sent numerous communications is often indicative of the defendant's specific purpose to harass").

{¶51} Consequently, the State presented sufficient evidence from which the jury could find that Montgomery made the telecommunications with the specific purpose to harass, intimidate, or abuse. Thus, Montgomery's telecommunications harassment conviction is based on sufficient evidence.

{¶52} Montgomery's fifth assignment of error is overruled.

### Second Assignment of Error

**The trial Court abused its discretion by failing to grant the Defendant/Appellant's request for continuance, when the Court appointed counsel was allowed to withdraw two (2) days before the trial. There was no indication that the Defendant/Appellant was doing this for purposes to delay but rather due to issues with the adequacy of this counsel.**

{¶53} In his second assignment of error, Montgomery asserts that the trial court erred by denying his motion to continue the jury trial. Specifically, he contends that, because his court-appointed counsel was permitted to withdraw just two days before the scheduled proceedings, the trial court abused its discretion by refusing to grant a delay and forcing him to represent himself without adequate time to prepare.

*Standard of Review*

{¶54} Generally, an appellate court reviews a trial court's denial of a continuance under an abuse of discretion standard. *State v. Ames*, 2019-Ohio-2632, ¶ 29 (3d Dist.). *See also Warren v. Stoutamire*, 2000 Ohio App. LEXIS 5922, *13 (11th Dist. Dec. 15, 2000) ("The right of a defendant to a continuance upon the

withdrawal of counsel is not absolute, and the decision to grant such a continuance rests with the sound discretion of the trial court."). Again, an abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Adams*, 62 Ohio St.2d 151, at 157-158.

**{¶55}** However, a defendant's failure to formally request a continuance waives all but plain error on appeal. *See State v. Chappell*, 2010-Ohio-112, ¶ 6 (2d Dist.); *In re C.H.*, 2020-Ohio-716, ¶ 81 (3d Dist.). Again, to prevail on a claim of plain error, the appellant must show that, but for the trial court's alleged error, the outcome of the proceeding clearly would have been different. *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996). "We take notice of plain error 'with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice.'" *State v. Heimberger*, 2018-Ohio-636, ¶ 28 (3d Dist.), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

*Analysis*

**{¶56}** Typically, when evaluating a motion for a continuance, a trial court should consider factors such as the length of the requested delay, prior continuance requests, inconvenience to parties, witnesses, counsel, and the court, and whether the delay is for legitimate reasons or is dilatory, purposeful, or contrived. *Ames* at ¶ 30. The trial court must also consider whether the defendant contributed to the circumstances leading to the request. *Id.* There are no mechanical tests for deciding if a continuance denial violates due process; the answer depends on the specific

circumstances of each case and the reasons presented to the trial court at the time of the request. *Id.* at ¶ 29. These considerations are weighed against concerns like the trial court's right to control its docket and the public's interest in the prompt dispatch of justice. *Id. See also State v. Pattson*, 2010-Ohio-5755, ¶ 19 (2d Dist.) ("In determining whether a trial court abused its discretion when ruling on a motion for continuance, a reviewing court must weigh any potential prejudice to the defendant against the trial court's 'right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.'"), quoting *State v. Unger*, 67 Ohio St.2d 65, 67 (1981).

**{¶57}** While the parties dispute whether Montgomery actually requested a continuance, our review of the hearing transcript reveals no affirmative request for such relief. *Compare State v. James*, 1998 Ohio App. LEXIS 312, *5 (5th Dist. Jan. 20, 1998) ("noting that the record indicates that at no time during the proceedings did appellant ask the trial court for a continuance"). Thus, because Montgomery failed to formally move for a continuance, he waived all but plain error on appeal. *See State v. Downing*, 2020-Ohio-3984, ¶ 8 (2d Dist.).

**{¶58}** Based on our review of the record, we conclude that the trial court did not err—let alone commit plain error—by failing to sua sponte continue the proceedings just two days before trial. *See State v. Stembridge*, 2008-Ohio-1054, ¶ 14 (9th Dist.); *James* at *6 (concluding that James "failed to establish that the trial court [erred] by not sua sponte granting a continuance especially since appellant

-26-

never requested a continuance and failed to have his allegedly retained counsel present on the day of trial"). Critically, the eleventh-hour conflict was entirely of Montgomery's own making, and the record indicates his strategic disagreements likely would have occurred with any substitute counsel. *See State v. Wiley*, 2001 Ohio App. LEXIS 5139, *6-7 (2d Dist. Nov. 16, 2001).

{¶59} Moreover, considering our resolution of Montgomery's other assignments of error, there is no evidence to suggest that the outcome of his trial clearly would have been different had he been granted a continuance. *See Stoutamire*, 2000 Ohio App. LEXIS 5922, at *15 (11th Dist. Dec. 15, 2000) (concluding that "there is no basis for drawing the conclusion that had appellant been granted a continuance to obtain substitute counsel, the outcome would have been different"); *In re C.H.*, 2020-Ohio-716, at ¶ 84 (3d Dist.) (determining that "[u]nder the facts and circumstances of this case, we cannot find that the trial court was required to sua sponte grant a continuance"). Thus, there is no error, let alone plain error, with the trial court's decision to proceed to trial.

{¶60} Montgomery's second assignment of error is overruled.

{¶61} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**MILLER and WILLAMOWSKI, J.J., concur.**

Case No. 9-25-22

# <u>JUDGMENT ENTRY</u>

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

_____

William R. Zimmerman, Judge

<br>

_____

Mark C. Miller, Judge

<br>

_____

John R. Willamowski, Judge

DATED:
/hls